UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                              :

STANLEY TOLIN and JEFFREY STARK, *Individually*  :
*and on Behalf of All Others Similarly Situated,*  :

                                   :                 12 Civ. 8842 (PAE)

                   Plaintiffs,   :

              –v–                :                OPINION & ORDER

STANDARD & POOR'S FINANCIAL SERVICES, LLC  :
and THE McGRAW HILL COMPANIES, INC.,   :

                               :

                  Defendants.   :

                               :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      In this putative class action, lead plaintiffs Stanley Tolin and Jeffrey Stark ("Plaintiffs")

allege violations of New York law by defendants The McGraw Hill Companies, Inc. ("McGraw

Hill") and its wholly-owned subsidiary Standard & Poor's Financial Services, LLC ("Standard

and Poor's", and, collectively with McGraw Hill, "S&P"). Plaintiffs allege that S&P

intentionally, recklessly, and/or negligently issued false and misleading ratings of Fannie Mae

Non-Cumulative Preferred Stock Series T ("Rated Stock") that induced Plaintiffs and similarly

situated investors to purchase the Rated Stock. Plaintiffs allege that, without this high rating,

investors either would not have invested in the Rated Stock or would have demanded a higher

dividend, increasing Fannie Mae's cost of issuing the securities. Plaintiffs bring claims of

negligent misrepresentation and common law fraud under New York law.

      Presently pending is S&P's motion to dismiss the Complaint for failure to state a claim,

pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Securities and Litigation

Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f)(1). For the reasons that follow,

the Court grants S&P's motion to dismiss.

I.    **Background**[1]

    A. **Facts**

        1. **Parties**

Standard & Poor's is a wholly-owned subsidiary of McGraw Hill.  Both companies have

their principal place of business in New York, New York.  Compl. ¶¶ 18–19.  S&P is a

"nationally recognized statistical rating organization" (NRSRO) that "purports to provide

impartial, independent and objective ratings to public and private securities."  Compl. ¶¶ 19, 25–

28; Pl. Br. 1.  As an NRSRO, S&P is recognized by investors as providing "credible and reliable

ratings."  Compl. ¶ 28.

        Plaintiffs are both investors in the Rated Stock.  On May 13, 2008, Plaintiff Stark

purchased 1,000 shares of the Rated Stock for $25.00 per share.  Compl. ¶ 16.  On July 10, 2008,

Plaintiff Tobin purchased 1,000 shares of the Rated Stock for $20.47 per share.  *Id.* ¶ 17.

        2. **Class Period Events**

        On May 13, 2008, Fannie Mae issued an offering circular for the Rated Stock.  *Id.* ¶ 3.

The issue price was $25 per share; the dividend rate was 8.25%.  *Id.* ¶¶ 2–3.  The offering

---

[1] For the purpose of resolving the motion to dismiss, the Court assumes all facts pled in
Plaintiffs' Class Action Complaint ("Compl.") (Dkt. 1) to be true, drawing all reasonable
inferences in favor of Plaintiffs. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir.
2012).  The Court also considers documents incorporated into the complaint by reference and
documents publicly filed with the SEC. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d
87, 98 (2d Cir. 2007).

The following abbreviations are used herein for the parties' memoranda of law:  (1)
Memorandum of Law in Support of the Defendants' Motion to Dismiss the Class Action
Complaint ("S&P Br.") (Dkt. 8); (2) Plaintiffs' Memorandum of Law in Opposition to
Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint ("Pl. Br.") (Dkt. 16); and (3)
Reply Memorandum of Law in Further Support of the Defendants' Motion to Dismiss the Class
Action Complaint ("S&P Reply Br.") (Dkt. 17).

circular represented that the Rated Stock had received a "AA–" rating from S&P, indicating that Fannie Mae had a "very strong capacity to meet its financial commitments." *Id.* ¶ 3.

On September 6, 2008, the United States Government placed Fannie Mae in conservatorship and halted all dividend payments on the Rated Stock. *Id.* ¶ 11.  Between May 13, 2008 and September 8, 2008 (the "Class Period"), the stock price fell from $25 to $3. *Id.* ¶ 12.

### B.  Procedural History

#### 1.  The Class Action Complaint

On December 5, 2012, Plaintiffs filed the Complaint.  It alleges that the AA– rating that S&P had given the Rated Stock induced Plaintiffs and similarly situated investors to purchase the stock. *Id.* ¶¶ 6, 10; Pl. Br. 3.  The Complaint states claims for common law fraud and negligent misrepresentation under New York law. Compl. ¶¶ 71–85, 87–95.

As its basis for invoking federal jurisdiction, the Complaint relies on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). *See* Compl. ¶ 14.  Brought as a putative class action under Federal Rule of Civil Procedure 23(b)(3) on behalf of all persons or entities who acquired the Rated Stock during the Class Period, the Complaint alleges that the amount in controversy (when the claims of all class members are totaled) exceeds $5 million, exclusive of interest and costs, and that there is minimal diversity. *Id.* ¶¶ 14, 20.

As its basis for alleging that S&P did not believe the ratings it assigned to securities, the Complaint recites examples of what it asserts were S&P's "debilitating conflicts of interests." *Id.* ¶¶ 51–52.  These conflicts of interest do not uniquely relate to Fannie Mae's securities; rather, based on the pleadings, these conflicts, which largely take the form of financial incentives that

S&P allegedly had to assign favorable ratings to mortgage-backed securities of issuers who

retained S&P, would apply across the board to all such securities.[2]  *See, e.g., id.* ¶¶ 53–61.

### 2. S&P's Motion to Dismiss

On February 11, 2013, S&P moved to dismiss the Complaint. Dkt. 6–8. S&P argues

Plaintiffs' claims are entirely precluded by SLUSA, in that this lawsuit meets SLUSA's four

requirements for preclusion. S&P Br. 6–8. Alternatively, S&P argues, the Complaint fails to

state a claim, because it does not allege (1) an actionable misstatement by S&P; (2) a relationship

between Plaintiffs and S&P giving rise to a duty by S&P; (3) causation of Plaintiffs' losses by

S&P's alleged misconduct; and (4) reasonable reliance by Plaintiffs on the alleged misstatement.

S&P Br. 8–22. Finally, S&P argues, ratings opinions are protected by the First Amendment; as

such, a Complaint must allege, at a minimum, actual malice to state a cognizable claim. S&P Br.

23–25; *see, e.g., Compuware Corp. v. Moody's Investors Servs., Inc.*, 499 F.3d 520, 536–37 (6th

Cir. 2007); *In re Enron Corp. Sec., Derivative and "ERISA" Litig.*, 511 F. Supp. 2d 742, 825

(S.D. Tex. 2005).

On March 18, 2013, Plaintiffs opposed S&P's motion to dismiss. Dkt. 16.[3] On April 11,

2013, S&P filed their reply. Dkt. 17. On June 10, 2013, the Court heard argument.

---

[2] Plaintiffs also acknowledge that "the Rated Stock was not a traditional mortgage-back [*sic*] security," but allege that the structural conflicts inhibiting S&P from fairly rating mortgage-backed securities apply here because "the Rated Stock was a product created for the sole purpose of generating revenue to offset Fannie Mae's risky mortgage loans that were quickly failing." Compl. ¶ 62.

[3] Although notified of their right to amend the Complaint, Plaintiffs chose not to and so informed the Court at the initial pretrial conference. *See* Dkt. 9, 15.

## II.    Applicable Legal Standards

### A.    SLUSA

Congress enacted SLUSA in 1998 to prevent plaintiffs from making an end-run around the heightened pleading standards for securities fraud claims that the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(b), had put in place.  *See Romano v. Kazacos*, 609 F.3d 512, 517–18 (2d Cir. 2010).  In particular, SLUSA precludes plaintiffs from filing, in either state or federal court, certain class actions alleging violations of state fraud law in connection with the purchase and sale of certain securities.  15 U.S.C. § 78bb(f)(1).  To be covered by SLUSA, the litigation must be: (1) a covered class action; (2) based on state or local law; (3) concerning a covered security; and (4) the defendant must have misrepresented or omitted a material fact or employed a manipulative device or contrivance *in connection with* the purchase or sale of that security.  15 U.S.C. § 78bb(f)(1).

SLUSA expressly defines a number of these terms.  A covered class action is one in which "damages are sought on behalf of more than 50 persons . . . and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members."  15 U.S.C. § 78bb(f)(5)(B)(i)(I).  A covered security is one "listed or authorized for listing on the New York Stock Exchange or another national exchange."  15 U.S.C. § 77r(b); *see also In re Merkin*, 817 F. Supp. 2d 346, 360 (S.D.N.Y. 2011).

SLUSA, however, does not define "in connection with."  But both the Supreme Court and the Second Circuit have clarified the meaning of "in connection with": A "plaintiff's claims [must] 'turn on injuries caused by acting on misleading investment advice'—that is, where

5

plaintiff's claims 'necessarily allege,' 'necessarily involve,' or 'rest on' the purchase or sale of securities." *Romano*, 609 F.3d at 522 (quoting *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 48, 50 (2d Cir. 2005)); *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006).

When determining whether actions are covered by SLUSA, courts may apply the "artful pleading rule," and are "free to look beyond the face of the . . . complaints to determine whether they allege securities fraud in connection with the purchase or sale of covered securities." *Romano*, 609 F.3d at 519–20; *see also Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009) ("Courts may look to—they must look to—the substance of a complaint's allegations in applying SLUSA.")

### B. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In addition to meeting the pleading standards under *Twombly*, a complaint alleging fraud must meet the standard of Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[4]

## III.   Discussion

### A.   Analysis Under SLUSA

The Court considers first whether the class-action claims in the Complaint are precluded by SLUSA.

Plaintiffs do not dispute that the first three requirements for SLUSA preclusion are met, and they clearly are. This lawsuit is a covered class action of more than 50 persons involving claims of state law for a security that is traded on a national exchange. *See* Compl. ¶ 1 ("This is a shareholder class action brought by Plaintiffs . . . for violations of New York law."); *id.* ¶ 21 ("[T]here are likely hundreds of thousands of investors who purchased the Rated Stock and are members of the proposed Class."), *id.* ¶ 24 ("Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class."); *id.* ¶¶ 71, 87 (alleging state law claims); Declaration of Peter J. Linken (Dkt. 7) ("Linken Decl.") Ex. 1, at 1 (Rated Stock listed on NYSE). Plaintiffs and S&P disagree, however, whether S&P's ratings of the Rated Stock (*i.e.*, the allegedly fraudulent conduct) were issued "in connection with" the sale of Fannie Mae's securities. S&P Br. 8; Pl. Br. 22–24.

As noted, an alleged misrepresentation is made "in connection with" the purchase or sale of covered securities "where a fraudulent scheme and a purchase or sale of securities 'coincide.'" *Romano*, 609 F.3d at 521 (quoting *SEC v. Zandford*, 535 U.S. 813, 822 (2002)). Thus, if the

---

[4] Rule 9(b) applies to fraud generally; it is not limited to securities fraud. Fed. R. Civ. P. 9(b).

allegations in the complaint "necessarily allege," "necessarily involve," or "rest on" the purchase or sale of securities, this element for SLUSA preclusion is met. *Id.* at 522. The analysis thus turns on the allegations in the Complaint.

Here, the Complaint is rife with statements alleging that S&P's ratings were crucial to Plaintiffs' purchase of the securities. In paragraph 4, the Complaint states that the "S&P rating contained in the Offering Circular was an essential element to investors when choosing to invest in the Rated Stocks." Compl. ¶ 4. Two paragraphs later, the Complaint states that "[a]bsent this solid [AA–] rating, investors would not have invested in the Rated Stock or would have demanded a higher dividend rate at a higher cost to Fannie Mae. As such, the S&P rating was a *key element* that allowed Fannie Mae to provide the Rated Stock to investors at the offered rate of return." *Id.* ¶¶ 6–7 (emphasis added). The Complaint further states that "S&P was critically important to investors here as the Offering Circular was the only information available on the Rated Stock. . . . Without such a high rating, Fannie Mae could not have issued the Rated Stock . . . . The S&P rating contained in the Offering Circular was an *essential element* to investors when choosing to invest in the Rated stocks." *Id.* ¶¶ 39, 42, 47 (emphasis added). It adds that the "materially misleading statements and omissions . . . went to the core of their investment decision regarding the Rated Stock." *Id.* ¶ 79. Similar such statements are repeated throughout the Complaint. *See, e.g., id.* ¶¶ 8, 10, 11, 44, 45, 75, 78, 92.

On the bases of these statements, the Court concludes that Plaintiffs' allegations of S&P's misrepresentations entirely "rest on" and "necessarily involve" their purchase of securities. Any contrary construction would rewrite the Complaint.[5]

---

[5] Even if this SLUSA element turned not on the allegations in the Complaint but (as Plaintiffs suggest) the intended audience of the allegedly fraudulent statements, this standard would be met, because, as alleged in the Complaint, these statements were directed at potential purchases

The preceding SLUSA analysis applies to, and precludes, Plaintiffs' class action claims based both on common law fraud and negligent misrepresentation, because both claims rely on the same allegedly false and misleading misstatement: the AA- rating. *Id.* ¶¶ 72, 88–90; *see Gray v. Seaboard Sec., Inc.*, 126 F. App'x 14, 17 (2d Cir. 2005) (finding negligence claim barred by SLUSA where "the complaint makes clear that the negligence claim is premised on precisely the same allegations of material misrepresentations" as other SLUSA-precluded claims). Courts in this district have held negligent misrepresentation claims barred by SLUSA based on similar allegations. *See In re Merkin*, 817 F. Supp. 2d at 360 (collecting cases). All four requirements for preclusion under SLUSA are, thus, met for both the common law fraud and negligent misrepresentation claims.

The Court turns next to the appropriate remedy. SLUSA does not prescribe substantive standards for a cause of action, but instead is aimed at precluding covered cases from being brought as class actions based on allegations of state law. Nevertheless, the assembled case law holds that where all claims in a Complaint are precluded by SLUSA, and the Complaint does not distinguish between the individual Plaintiffs' claims and the class claims, the entire action (rather than merely the purported class-action vehicle) should be dismissed. *See, e.g., Lakeview Inv., LP v. Schulman*, No. 11 Civ. 1851 (TPG), 2012 WL 4461762, at *4 (S.D.N.Y. Sept. 27, 2012) (dismissing an entire action where all "claims in the complaint are brought by plaintiff 'for itself and on behalf of all other California residents that invested in the XL Fund and Market Fund.['] There are no separate 'individual' claims that can be severed from 'class' claims."); *In re*

---

and sales of the Fannie Mae securities at issue. *See, e.g.*, Compl. ¶ 6 ("The 8.25% annual dividend was reflective of the AA– rating provided by S&P. Absent this solid rating, investors would not have invested in the Rated Stock or would have demanded a higher dividend at a higher cost to Fannie Mae."); *id.* ¶ 42 ("Without such a high rating, Fannie Mae could not have issued the Rated Stock.").

*Merkin*, 817 F. Supp. 2d at 361 (dismissing in full common law fraud, negligent misrepresentation, and fraudulent concealment claims because they were barred by SLUSA); *Winne v. Equitable Life Assurance Soc'y of U.S.*, 315 F. Supp. 2d 404, 416 (S.D.N.Y. 2003) (Lynch, J.) ("[B]ecause all three state-law causes of action fall within SLUSA's parameters, the Complaint will be dismissed in its entirety.").

Here too, the allegations in the Complaint do not differentiate between the two named plaintiffs and similarly situated shareholders. Rather, the Complaint states that its allegations are "on behalf of [Plaintiffs] and all other similarly situated shareholders of Fannie Mae Non–Cumulative Preferred Stock." Compl. ¶ 1; *see also id.* ¶¶ 10–11, 34, 43, 63, 69, 73–75, 78–79, 84, 85 (making allegations for "Plaintiffs and other members of the Class" or "Plaintiffs and the Class"). Dismissal of these claims under SLUSA, including those brought on behalf of individual plaintiffs Tolin and Stark, is therefore appropriate. Such dismissal in any event would be required, because, stripped down to a case involving claims solely by those two individuals, the case (as plaintiffs conceded at argument) would fall short of the amount-in-controversy element (more than $75,000) necessary to support diversity jurisdiction. *See* Transcript of June 10, 2013 Oral Argument (Dkt. 21) ("Tr."), at 26.

### B. Common Law Fraud

As an alternate basis for dismissal, Plaintiffs' common law fraud claim is dismissed because it fails to allege an actionable misstatement. This defect would bar the fraud claim even if this action were not precluded by SLUSA.[6]

---

[6] Although defendants assert that the Complaint fails to state a claim on various grounds, the Court addresses here only this one particularly glaring deficiency. In the event that Plaintiffs pursue in a new lawsuit their claims of negligent misrepresentation, defendants are at liberty to renew their challenges to such claims.

To state a claim for fraud under New York law, a plaintiff must show: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 171 (S.D.N.Y. 2009) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)).

The only misstatement alleged in this case is the allegedly "false and misleading" credit rating assigned by S&P to the Rated Stock. Compl. ¶ 72. Plaintiffs contend that these ratings are not opinions, but are "false statements of fact." Pl. Br. 16. However, courts in this circuit— and around the country—have consistently held that credit ratings are statements of opinion. *See, e.g., In re Bear Stearns Mortgage Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 770 (S.D.N.Y. 2012) ("It is well-settled that investment ratings are subjective opinions . . . ."); *In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09 MD 2030 (LAP), 2011 WL 536437, at *12 (S.D.N.Y. Feb. 9, 2011) ("Credit ratings are statements of opinion."), *aff'd sub nom. Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98 (2d Cir. 2012); *see also Compuware Corp. v. Moody's Investors Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007) ("A . . . credit rating is a predictive opinion, dependent on a subjective and discretionary weighing of complex factors.").

As such, for a credit rating to be actionable, a plaintiff must allege that the holder of the opinion reflected in the rating did not believe the opinion at the time that it was made. This is the same standard as required under the PSLRA: "[B]ecause the elements of common law fraud under New York law are 'substantially identical to those governing Section 10(b),' an 'identical analysis applies.'" *Abu Dhabi Commercial Bank*, 651 F. Supp. 2d at 171; *see SNCB Corporate Fin. Ltd. v. Schuster*, 877 F. Supp. 820, 826 (S.D.N.Y. 1994) ("'[A] statement of opinion is not

11

fraudulent under New York law unless it is not honestly held at the time it was made." (citing *Mann v. Levy*, 776 F. Supp. 808, 813 (S.D.N.Y. 1991)), *aff'd*, 71 F.3d 406 (2d Cir. 1995); *see also Kleinman v. Elan Corp.*, 706 F.3d 145, 153 (2d Cir. 2013) ("Subjective statements can be actionable only if the 'defendant's opinions were both false and not honestly believed when they were made.'" (quoting *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 113 (2d Cir. 2011))); *City of Omaha, Civilian Emps. Ret. Sys. v. CBS Corp.*, 679 F.3d 64 (2d Cir. 2012) (applying *Fait* to Section 10(b) claims).

Here, the Complaint fails by a wide margin to allege adequately that S&P did not believe the ratings when it made them. The Complaint makes only generic statements about S&P's "debilitating conflicts" and the "strong competitive and financial pressure to deliver favorable evaluations of the Rated Stock." Compl. ¶ 51. It alleges that these pressures "served as a motive for S&P to provide unwarranted favorable ratings." *Id.* ¶ 52. But these allegations at most explain why S&P, in theory, had a generalized motive to issue skewed, non-objective ratings. The Complaint fails entirely to allege, let alone with particularity, what S&P's state of mind was at the time it issued the particular ratings at issue in this case. It does not allege, for example, that the S&P personnel responsible for formulating S&P's rating of Fannie Mae did not, at the time, believe that Fannie Mae merited the rating given. *See id.* ¶¶ 51–61, 63–68; *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 775–76 (1st Cir. 2011) ("[T]he complaint also alleges that the ratings agencies produced high ratings aimed at keeping business, [b]ut, tellingly, the complaint stops short of alleging expressly that the leadership of S&P or Moody's believed that their companies' ratings were false . . . . That a high rating may be mistaken, a rater negligent in the model employed or the rating company interested in securing more business may be true, but it does not make the report of the rating

false or misleading."); *accord In re IndyMac Mortgage-Backed Sec. Litig.*, 718 F. Supp. 2d 495, 511–12 (S.D.N.Y. 2010) (challenge to accuracy of ratings themselves insufficient to allege that opinions were not truly held when issued); *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 692 F. Supp. 2d 387, 395 (S.D.N.Y. 2010).

At argument, the Court pressed Plaintiffs' counsel whether the Complaint makes any other allegation on the basis of which S&P's disbelief of its ratings of the Rated Stock at the time of the ratings could be inferred. Plaintiffs' counsel identified only the "timing issue," *see* Tr. 37–38, to wit, that just four months after the ratings were issued, Fannie Mae was put into conservatorship. *Id.* Plaintiffs' counsel contended that the Court could "back out from the events of September [] the state of mind of S&P in May." *Id.* at 38.

That argument is exceedingly unpersuasive. Plaintiffs fail to put S&P on notice of any facts in May 2008 that would make it implausible that S&P sincerely believed in the rating it assigned then to Fannie Mae. Quite the contrary: Given that the ensuing four months (May through September 2008) were ones involving epic (and for many, unforeseen) turmoil for the American economy and the financial markets in general, the inference that Plaintiffs urge based on the events of September 2008—that S&P in May 2008 must have disbelieved the favorable rating it was assigning to S&P—does not logically follow.

Accordingly, independent of the SLUSA bar, Plaintiffs' claim for common-law fraud fails to state a claim.[7]

---

[7] In light of the SLUSA dismissal and in light of the Complaint's failure to plead an actionably false or misleading credit rating, the Court has no occasion to reach or address defendants' alternative arguments for dismissal based on Rule 12(b)(6).

**CONCLUSION**

For the reasons stated above, S&P's motion to dismiss based on SLUSA is granted. The dismissal of Plaintiffs' claims on behalf of a putative class is with prejudice. Because Plaintiffs' fraud claims fail to state a claim, the dismissal of those claims is also with prejudice. The dismissal of Plaintiffs' negligent misrepresentation claims, however, is without prejudice.

The Clerk of Court is directed to terminate the motion pending at docket number 6 and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 24, 2013
      New York, New York

14